## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into by and between Time Warner Cable Pacific West LLC  and the County of Los Angeles, California (the "County"), (jointly, "the Parties") and is effective as of the date of the latter of the last signature shown hereon, or the date approved by the County Board of Supervisors (the "Effective Date").

Time Warner Cable Pacific West LLC  owns and operates the cable television system that serves the County, and represents and warrants that it has authority to enter into this agreement on its own behalf and on behalf of "TWC" entities that may have, or may have had, any interest in the Dispute as defined below. Throughout this Agreement, "TWC" will include all present and former Time Warner Cable entities that serve or have provided cable services in the County, their parents, predecessors, affiliates, and subsidiaries and/or any present or former directors, officers, shareholders, successors, assigns, employees, attorneys, agents, insurers, and representatives of any of the foregoing, including the current franchisee for the Time Warner Cable systems in Los Angeles County, Time Warner Cable Pacific West LLC.

WHEREAS, a dispute has arisen between the Parties over TWC's payment of public, educational and governmental ("PEG") access fees for the calendar year 2008 and TWC's taking a credit against its franchise fees in 2011 in the amount of TWC's payment of PEG access fees for 2008; and

WHEREAS, the County filed a lawsuit against TWC entities styled County of Los Angeles v. Time Warner NY Cable LLC, CV12-6655 (filed Aug. 1, 2012) (the "Lawsuit") regarding TWC's payment of PEG fees for 2008 and its taking a credit against its 2011 franchise fees in the amount of TWC's PEG payment for 2008; and

WHEREAS, TWC has filed an Answer and Counterclaim in the Lawsuit alleging, among other things, violation of federal and state law with respect to the use of PEG fees, and with respect to the provision of certain services by TWC during, before and after 2008, which TWC contends constitute franchise fees under federal law; and

WHEREAS, the County has filed an Answer and Additional Claims; and

WHEREAS, the Parties' respective claims and counterclaims are collectively referred to as "the Dispute"; and

WHEREAS, each Party believes its claims and/or counterclaims are valid, but would cost money to pursue that the Parties believe could be put to better use; and

WHEREAS, the Parties recognize that the County currently maintains a government-programming television channel (the "County Channel") that cablecasts the County's government meetings, other proceedings, and other government and non-commercial programming that the County deems relevant to it; and

WHEREAS, although acknowledging that TWC has no legal obligation to carry the County Channel throughout TWC's service area in incorporated areas in the County, the County desires that TWC, at no cost to the County from TWC,

distribute the County Channel in both incorporated and unincorporated areas, in the County; and

WHEREAS, for various reasons, including the Parties' desire to improve their overall relations and to avoid the cost of litigation, the Parties desire to enter into this Agreement; and

WHEREAS, without any admission of liability whatsoever by any Party as to the validity, force, or effect of any asserted or unasserted claim or counterclaim, the Parties desire to fully and completely settle and resolve the Dispute as set forth below.

NOW THEREFORE, in consideration of the premises, mutual covenants and promises set forth in this Agreement, and for other good and valuable consideration, the validity, sufficiency and receipt of which are hereby acknowledged, TWC and the County hereby STIPULATE AND AGREE as follows:

1.      **Nature of Obligations.**  This agreement establishes terms and conditions for the carriage, distribution and interconnection of the County Channel in incorporated areas served by TWC within Los Angeles County. Except as expressly provided in this Agreement, all of TWC's obligations regarding carriage, distribution and interconnection between TWC and the County of the County Channel pursuant to this Agreement, shall be performed at no cost to the County.  TWC agrees that none of the obligations assumed, and none of the rights granted to the County in this Agreement are franchise obligations, but instead are independent contractual obligations, voluntarily assumed.  Carriage, distribution and interconnection of the

County Channel pursuant to this Agreement is not a franchise fee or PEG fee within the meaning of federal or state law.  To avoid any confusion, no service, facility or equipment provided by TWC to the County or any other entity pursuant to this Agreement, and no amount expended by TWC to comply with this Agreement (except as may relate to the 2011 payment of the 2008 PEG fee described in Paragraph 4 herein) (whether anticipated or unanticipated) constitutes a franchise fee, or shall constitute a payment of the PEG fee required under the County Code, and TWC agrees that it may not take any offset against any franchise fee or PEG fee for its actions taken in compliance with this Agreement.  The obligations hereunder are continuing obligations, except as expressly provided otherwise.

2.          **County-Wide Coverage of County Channel.**  Although it contends that it has no other legal obligation to carry the County Channel in incorporated areas of Los Angeles County, TWC will:

(a)  digitally interface at the County's Demarcation Point located at Kenneth Hahn Hall of Administration building at 500 West Temple Street, for the purpose of receiving and transporting the video programming for the County Channel.  The County shall be responsible, at its expense, to deliver the video programming for the County Channel to the Demarcation Point with the County and TWC each having the obligations and rights regarding the format for the programming as delivered by the County to TWC as provided under the  Digital Infrastructure and Video Competition Act of 2006, Sec. 5870(g)(1). If any additional conversion from the County's acceptable format is necessary to facilitate transporting the video programming on the TWC network, TWC shall, at its expense,

install the necessary network or system devices to do so.  TWC shall distribute the
County's video programming over the TWC network so that it may comply with its
obligations hereunder.  The County Channel shall be used for government and other
non-commercial programming deemed relevant to the County.  The "Demarcation
Point" is the point at which the signal provided by the County connects to the
County-side of the TWC device(s).

(b)  transport the County Channel to a point or points where it can be
distributed to subscribers in all parts of the County served by TWC; and

(c)   deliver a signal viewable to all of its subscribers  as provided
herein, complying with all the requirements of this Agreement; and

(d)    perform all tasks and provide and maintain all network and
systems equipment and facilities necessary on TWC's side of the Demarcation point
to do the foregoing throughout the term of this Agreement.

(e)  This Agreement does not add to or subtract from any obligation
under state or federal law that TWC may or may not have to extend its cable system
to any potential customer who does not already receive TWC's service.

3.           **Other Carriage Obligations.**

(a)  TWC will begin carrying the County Channel in each incorporated
area of the County that is within TWC's service area as soon as reasonably
practicable, and shall provide the County Channel in all areas of Los Angeles
County (both incorporated and unincorporated areas) that are within Time Warner
Cable's service area by no later than twelve months of the Effective Date. If TWC
acquires any additional service area(s) within the County, TWC will extend the

County Channel to that area within a reasonable period of time after the closing of the transaction and as part of the integration of the acquired system.

(b)     TWC shall carry the County Channel on the same channel number throughout the entire County. The County Channel shall be viewable, by any subscriber who is already able to view digital channels, without the need for additional equipment or the imposition of an additional charge.

(c)     TWC shall provide analog-only subscribers with equipment to view the County Channel, according to Exhibit A, which is attached hereto.  Exhibit A does not relieve TWC of any obligation it may have with respect to the provision of digital adaptors or similar devices under applicable law.

(d)     The County Channel shall be carried on the Basic Service Tier, or if there is no Basic Service Tier, provided to every subscriber to cable services. Subject to any limitations on the signal as provided to TWC by the County, the programming on the County Channel shall be accessible, selectable, and recordable in the same manner as other PEG services offered by TWC within the areas of the County served by TWC. . Without limiting the above, County shall have the same rights with respect to the provision of the County Channel in incorporated areas that it has with respect to the provision of the County Channel in unincorporated areas under federal and state law.

4.       **Treatment of 2011 Payment.** TWC agrees that the amount it paid in 2011 as the 2008 PEG fee may be  allocated by the County as the franchise fee for the first quarter of 2011.

5.        **Withdrawal of Complaint and Counterclaims**.   Within ten (10) business days of the Effective Date, the County and TWC shall jointly dismiss the Lawsuit and all of their claims and counterclaims filed therein, with each Party being responsible for its own attorneys' fees and costs.   Such dismissal shall be with prejudice, except that the Parties hereby agree that the dismissal of the claims in the Lawsuit shall preserve the right and ability of the Parties to make the following future claims: (i) The County may review the franchise fees and PEG fees paid by TWC from January 2011 forward, subject to the limitations periods applicable under California law, including any claims that it may have with respect to the fee paid to the California Public Utilities Commission; and (ii) TWC may review the County's use of PEG fees under federal law for the period from January 2011 forward, subject to the limitations period applicable under California law.

6.        **Special Releases.**

(a)       **TWC's Release of the County.**  Except with respect to any obligations created by or arising out of this Agreement, or preserved pursuant to Paragraph 5, TWC hereby releases and absolutely and forever discharges the County and its elected officials, agents, contractors, employees, attorneys, predecessors, successors and assigns, and each of them, form any and all claims, demands, grievances, liabilities, debts, accounts, obligations, costs, expenses, liens, actions and causes of action, of every kind and nature whatsoever, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, which TWC has or claims to have, now or hereafter, against the County or its elected officials,

agents, contractors, employees, attorneys, predecessors, successors and assigns, and each of them, arising out of or in connection with the Dispute.

(b)      **The County's Release of TWC.**  Except with respect to any obligations created by or arising out of this Agreement, or preserved according to Paragraph 5, the County hereby releases and absolutely and forever discharges TWC and its agents, contractors, employees, attorneys, predecessors, successors and assigns, and each of them, form any and all claims, demands, grievances, liabilities, debts, accounts, obligations, costs, expenses, liens, actions and causes of action, of every kind and nature whatsoever, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, which the County has or claims to have, now or hereafter, against TWC or its agents, contractors, employees, attorneys, predecessors, successors and assigns, and each of them, arising out of or in connection with the Dispute.

7.      **Inapplicability of Civil Code Section 1542.**  Each of the Parties to this Agreement acknowledges and agrees that the releases contained in this Agreement are special releases and that section 1542 of the Civil Code of the State of California is not applicable. If and to the extent it should be determined that the releases contained in this Agreement are not special releases, contrary to the Parties' acknowledged intention and agreement, each Party specifically waives the benefit of the provisions of section 1542 of the Civil Code of California, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,**

**WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

8.        **Waiver of Unknown Claims.**  Each Party hereby acknowledges that

each Party is aware that such Party may later discover facts in addition to or

different from those which such Party now knows or believes to be true with respect

to the subject matter of this Agreement and that it is such Party's intention,

notwithstanding, to fully, finally and forever, settle and release all of the claims

released by this Agreement, known or unknown, suspected or unsuspected, which

now exist, or previously existed between the Parties. In furtherance of such

intention, the releases given in this Agreement shall be and shall remain in effect as

a full and completed release, notwithstanding the discovery or existence of any such

additional or different facts.  The Parties, further, accept and assume the risk that

such facts may turn out to be different from the facts now known or believed to be

true by the parties and agree that the releases given in this Agreement shall remain

in all respects effective and shall not be subject to termination or rescission by

reason of any such difference in fact.

9.        **Representations and Warranties.**

(a)      **Non-assignment.**  Each of the Parties to this Agreement

hereby represents and warrants that such Party has not heretofore assigned or

transferred, or purported to assign or transfer, to any person whomsoever any of the

claims, demands, grievances, liabilities, debts, accounts, obligations, costs,

expenses, liens, actions or causes or action are released by the terms of this

Agreement.  Each Party to this Agreement further agrees to indemnify and hold

harmless any other Party from and against the assertion by any third party of any

such claims, demands, grievances, liabilities, debts, accounts, obligations, costs,

expenses, liens, actions or causes of action, including reasonable attorneys' fees

and costs incurred, arising out of or in connection with any such assignment or

transfer by such Party.

> (b)    **Authority.**  Each person executing this Agreement on behalf of

a corporation or other legal entity warrants that he or she holds the position indicated

beneath his or her signature and that he or she has been duly authorized by said

corporation or other legal entity to execute this Agreement on its behalf.

10.        **Effective Date.**  This agreement shall become effective upon the later

of the date it is (a) signed by all Parties; or (b) finally approved by the County Board

of Supervisors.

11.        **Notices.**  Any notice that is required or permitted under this Agreement

may be given by mail, courier, or hand delivery addressed as follows:

If to the County:

Susan Herman, Senior Manager
Multimedia, Cable & Telecommunications
Chief Executive Office
500 West Temple Street, Room 493
Los Angeles, California 90012


If to TWC:

Time Warner Cable, Attn. Government Relations,
550 North Continental Blvd., Suite 250
El Segundo, CA 90245


Time Warner Cable, Attn. Law Department, Regulatory
60 Columbus Circle,
New York, NY 10023

12.        **Term**.  The term of this Agreement shall be 10 years from the Effective Date, except that if TWC's obligation to provide the County Channel in the unincorporated areas of the County ceases prior to the end of the term, TWC may terminate this Agreement on 60 days written notice to the County. A change in TWC's legal obligation to carry government access programming will not preclude TWC from continuing to carry the County Channel, if TWC so chooses and the County consents.

13.        **Changes in Technology.**  The Parties agree that this Agreement is based on the technology currently used by TWC as of the Effective Date for the delivery of video programming to customers in the County.  In the event that technological advances change the delivery format for video programming on TWC's cable system in the County, TWC reserves the right to deliver the programming in the format then used by TWC, subject to Paragraph 3 and applicable law. The Parties agree that, on the written request of either Party and on reasonable notice, they will meet no more than annually to review the County channel, including changes in technology, new formats, viewership patterns and any other issue related to the Channel that either party identifies.

14.        **Miscellaneous.**

           (a)        **Independent Advice.**  Each Party to this Agreement acknowledges and agrees that such Party has been represented throughout the negotiation and documentation by attorneys of the Party's choice and has been advised by such attorneys with respect to this Agreement and the effect of the releases given in this Agreement.  Each party to this Agreement further

acknowledges and agrees that such Party has read this Agreement, knows the contents of this Agreement and in executing this Agreement has relied solely on the Party's own judgment, belief and knowledge, and the advice and recommendations of the party's attorneys, concerning this Agreement, and has not been induced to enter into this Agreement by any representation or statement of any other party not expressly contained in this Agreement.

(b)      **Successors and Assigns.**  This Agreement shall be binding on TWC and any, voluntary or involuntary successor or assign in whole or in part of: (i) the franchises held by TWC as the same may be renewed or extended; or (ii) the system controlled by TWC.

(c)      **Integration.**  This Agreement sets forth the entire agreement between the Parties relating to the subject matter of this Agreement.  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties with regard to the subject matter hereof are incorporated in this Agreement.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party to any other party with respect to the subject matter of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties with respect to the subject matter hereof are waived, merged in this Agreement and superseded by it. This Agreement is an integrated agreement; its terms are intended by the Parties as a final expression of their agreement with respect to the subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The Parties

further intend that this Agreement constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Agreement.

(d)    **No Admission of Liability or Correctness of Computations.** Each Party acknowledges and agrees that this Agreement accomplishes the compromise of disputed claims and is not intended to constitute an admission of liability, wrongdoing or error on the part of any Party or its respective employees, agents, attorneys, representatives, or parent, subsidiary or affiliated companies, or the correctness of any calculations performed by or on behalf any party regarding the amount of franchise or PEG fees due or not due.  Any liability, wrongdoing or error is expressly denied by each Party to this Agreement and this Agreement is without prejudice to any Party's claims or defenses in any future proceedings between the Parties to this Agreement, except to the extent that such claim or defense is inconsistent with the express promises herein.

(e)    **Additional Actions.**  The Parties agree to take such other action as may be reasonably required to carry out the terms of this Agreement.

(f)    **Titles and Captions.**  Titles and captions contained in this Agreement are inserted as a matter of convenience and for reference and are not intended and shall not be construed to define, limit, extend or otherwise describe the scope of this Agreement or any provision of this Agreement.

(g)    **Waiver.**  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of this Agreement shall not be

deemed to be a waiver of any other breach of that or any other provision of this Agreement.

(h)      **Modification and Amendment.**  No modification of any of the terms or provisions of this Agreement shall be binding on any Party to this Agreement unless made in writing and signed by a duly authorized representative of such Party.

(i)      **Agreement to be Governed by California Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California applicable to contracts entered into and wholly performed with said state.

(j)      **No Construction.**  No Party to his Agreement or such Party's attorney shall be deemed to be the drafter of this Agreement for purposes of interpreting or construing any of the provisions of this Agreement.  This Agreement shall be interpreted in accordance with the fair meaning of its language and not strictly for or against any of the Parties to this Agreement.

(k)      **Execution in Counterparts.**  This Agreement may be executed in any number of copies by the Parties to this Agreement on separate counterparts and will become effective upon signature by all Parties upon one of more such counterparts.

///

///

///

///

**IN WITNESS WHEREOF,** the Parties hereto have executed and delivered this

Agreement as of the dates shown below.

COUNTY OF LOS ANGELES

By: _____

APPROVED AS TO FORM:

JOHN F. KRATTLI
County Counsel

By: _____
KATHY BRAMWELL
Principal Deputy County Counsel

Its: _____

TIME WARNER CABLE PACIFIC WEST
LLC

By: _____

Dated: _Sept 25_, 2013

Its: _SVP, Operations_

_____

Settlement Agreement and Mutual Release
15

**EXHIBIT A**

1.      **Carriage in Digital Format.**
Under the Settlement Agreement and Mutual Release, TWC may carry the County Channel in digital-only formats. TWC may implement the conversion from analog to digital-only in different parts of the County at different times. However, in any part of the County, any conversion from analog to digital-only carriage of the County Channel shall be made consistent with the requirements of this Exhibit A.

2.      **TWC Policy, Generally.**
TWC agrees to provide Digital Adaptors ("DAs") to subscribers in accordance with its policies, as set forth below, and agrees that it will publicize the availability of DAs as set forth in this Exhibit A.

3.      **Notice of Digitization.**
        (a)      TWC will provide the County at least 60 days prior notice of the date that the County Channel will be provided in a digital-only format.
        (b)      TWC will provide subscribers at least 30 days notice of the change to digital-only delivery of the County Channel, and offer to provide any analog-only subscriber upon request a DA as provided in paragraph 4.
        (c)      Unless the County Channel, once provided in digital-only format, will appear at the same channel number for a customer with a standard converter, a customer with a DA, and a customer who receives signals without using TWC provided equipment, then TWC will identify where the signal may be found, and any steps that may be required to locate it (e.g., re-programming the receiver).

4.      **Pricing and Provision Policy.**
TWC will provide DAs to customers in accordance with the general policy used by TWC in the Metro LA area, as set forth in the subparagraphs of this paragraph, subject to change. TWC will provide DAs to customers within the incorporated and unincorporated areas of the County on the same terms and at the same price that DAs are made available to customers elsewhere in the Metro LA area:
        (a)      Each analog-only customer may request and receive one DA per household for 12 months without charge after a change of programming on the County Channel from analog to digital or after the County Channel is provided in digital format in the customer's area for the first time.
        (b)      More than one DA, and all DAs after 12 months, can be obtained by the customer from TWC for a charge of $0.99 a month.
        (c)      TWC will offer to deliver the free DAs to subscribers at their service address by mail without charge.